Charles F. Bartson and William Millard, trading as Bartson & Millard, Appellants, v. J. V. Wiekert et al., Appellees.

### (Not to be reported in full.)

Appeal from the Circuit Court of Logan county; the Hon. THOMAS M. HARRIS, Judge, presiding. Heard in this court at the October term, 1914. Reversed with directions. Opinion filed April 16, 1915. Rehearing denied May 26, 1915.

## Statement of the Case.

Charles F. Bartson and William Millard, copartners, trading as Bartson & Millard, filed a bill to foreclose a mechanic's lien on land owned or occupied by J. V. Wiekert and H. A. Bailey, for labor in cutting a drainage ditch thereon. On the hearing the bill of complaint was dismissed. The complainants appeal.

A number of persons owning land through which a creek flowed, contracted with the appellants for the cutting of a drainage ditch through their lands, and agreed to pay a designated sum per rod for so much of the ditch as crossed their respective lands. Each landowner agreed to pay the amount set opposite his name on the contract. Opposite the names of Wiekert and Bailey appeared the sum of $714.56 for 81.2 rods. The contract provided that it should be null and void unless signed by all of the parties. All of the landowners, with the exception of Bailey, signed the contract under seal. Bailey owned two eighty-acre parcels of land divided by a section line, which was in the possession of Wiekert under a five-years lease containing an option to purchase. Wiekert, in signing the contract, placed a star beside his name and a similar sign on the margin and wrote thereon, "signature binding only whenever ditch is cut on or along section line."

The court found that Bailey did not sign the con- tract or authorize Wiekert to do so for him; and also that the ditch was not cut on or along the section line.

The evidence showed that when the subject of cutting the ditch was being discussed by the landowners, one of them testified that he called up Bailey by the telephone and asked him what he would do in regard to the matter and he replied: "The farm is out of my hands; any arrangements will have to be made with Mr. Wiekert." Bailey does not deny this conversation, but says that he does not remember it. Appellant Millard testifies that after the ditch was completed he called on Bailey and asked him to give him a check for the money, which Bailey refused to do, telling him that Wiekert was in control of the land. Bailey testifies that he talked with Wiekert about the matter and tried to discourage him from joining in the project, but he does not testify that he ever forbid him to do so.

Wiekert contends that as the ditch was not cut on or along the section line, he is not liable upon the contract. The creek entered the north eighty at the southeast corner thereof and meandered in a crooked and circuitous route in a northwesterly direction across the west line thereof about one hundred and eighty feet north of the section line. The object, as stated in the contract, was to straighten out the course of the creek. One of the landowners testified that when he saw Wiekert about signing the contract, the latter said he was in favor of cutting the ditch provided it went on the section line, and that the witness told Wiekert it could not be cut clear through on the section line, to which Wiekert replied in substance: "No, they could not go clear through, they had to make a turn in his field"; that Wiekert marked on the map the place to which the ditch could go on the section line and where it would have to turn into the field and go northwesterly across the land, and that the place

marked by Wiekert is about the place where the turn was actually made.

The ditch followed the section line bounding the north eighty on the line about half way across the eighty, then turned northwesterly and cut the west line of the eighty about one hundred and eighty feet north of the section line. This was done in order to make a connection with the creek where it crossed the west line of the eighty and entered the land of one Westen, and to avoid cutting through a sand hill on the latter's land. One of the surveyors testified that Wiekert pointed out to him practically the place where the ditch was cut and where it should leave the section line. The county surveyor, whom the landowners employed to locate the line of the ditch, testified that he told Wiekert that it would be impossible to carry the ditch on the line all the way across his land, as a curve had to be made to avoid the sand hill, and that Wiekert replied, "well, keep on the section line as far as possible."

C. E. McNemar and Beach & Trapp, for appellants.

W. A. Covey, for appellees.

Mr. Presiding Justice Eldredge delivered the opinion of the court.

## Abstract of the Decision.

1. Mechanics' liens, § 33*—*when lessee's contract for improvement binding on lessor.* Under section 1 of the Mechanic's Lien Act (J. & A. ¶ 7139) an owner of land who, without objections, knowingly permits a lessee to contract for an improvement, subjects the property to a lien therefor.

2. Appeal and error, § 1397*—*review of findings based on depositions.* The Appellate Court must review the evidence to determine whether a finding of fact made by a chancellor is contrary to

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

the weight of the evidence, when based upon depositions taken before a master, without the latter making a finding of facts.

3. MECHANICS' LIENS, § 33*—*when evidence sufficient to show lessor's consent to lessee's contract for improvement.* The evidence *held* to show that a landowner consented to his tenant contracting for the construction of a ditch on the demised premises, so as to entitle the contractor to a mechanic's lien therefor.

4. MECHANICS' LIENS, § 49*—*when substantial compliance with contract sufficient.* A substantial compliance with a contract to construct a ditch on or along a section line, *held* to entitle the contractor to a mechanic's lien, although the contour of the land necessitated deviations from the section line.

